UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| NANCY J. WILLS, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | No. 2:10-CV-167 |
| v. | ) ) | *Collier / Lee* |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

## REPORT AND RECOMMENDATION

Plaintiff Nancy J. Wills ("Plaintiff") was denied supplemental security income ("SSI") by the Commissioner of Social Security ("Commissioner" or "Defendant"), and she now appeals that denial pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), which provide for judicial review of the Commissioner's final decision denying SSI benefits. Plaintiff, who suffers from depression and anxiety, contends that the Administrative Law Judge ("ALJ") who heard her claim erred in concluding that she was not disabled because she was able to perform a significant number of medium jobs that accommodated her mental impairments. Plaintiff has moved for summary judgment, seeking reversal of the Commissioner's decision and an award of benefits [Doc. 10]. Defendant, in response, has moved for summary judgment [Doc. 12]. For the reasons stated below, I **RECOMMEND** that: Plaintiff's motion for summary judgment [Doc. 10] be **DENIED**; Defendant's motion for summary judgment [Doc. 12] be **GRANTED**; the decision of Commissioner be **AFFIRMED**; and this action be **DISMISSED WITH PREJUDICE**.

## I. ADMINISTRATIVE PROCEEDINGS

Plaintiff protectively filed an application for SSI on July 10, 2007,[1] alleging a disability onset date of July 1, 2006, which was later amended to July 10, 2007 (Tr. 10, 22, 86-88, 97-104). Her claim was denied initially (Tr. 48-51) and on reconsideration (Tr. 55-57). A hearing was held on July 9, 2009 (Tr. 20-40), after which the ALJ found Plaintiff was not disabled between the alleged onset/application date, July 10, 2007, and the date of his decision, September 21, 2009 (Tr. 7-17). The decision of the ALJ became final when the Appeals Council denied Plaintiff's request for review (Tr. 1-5), and Plaintiff sought timely judicial review.

## II. DISABILITY DETERMINATION PROCESS

The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(I-v).

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant

---

[1] The documents actually reflect an application date of November 5, 2007 (Tr. 86). Neither party addressed this discrepancy and it appears the parties agree in their pleadings that the proper date for consideration of Plaintiff's application and onset is July 7, 2007, the date the ALJ used in his decision.

2

>       is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden of proof at the first four steps. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The claimant bears the burden of proof at the first four steps to show the extent of her impairments, but the burden shifts to the Commissioner at step five to show there are jobs the claimant can perform despite her impairments. *Id.* In order to make the required findings at steps four and five, the ALJ must assess the claimant's residual functional capacity ("RFC"), which refers to the maximum level of work the claimant can perform on a "regular and continuing basis"—i.e., for 8 hours per day, five days per week. Social Security Ruling ("SSR") 96-8p.

## III.    FACTUAL BACKGROUND AND ALJ'S FINDINGS

### A.    Hearing Testimony

#### 1.    Plaintiff's Testimony

Plaintiff testified she was born in 1980, completed the tenth grade, and later obtained a GED (Tr. 23). She never held a job for more than two months because she became nervous and experienced panic attacks when working around other people (Tr. 24-25). Plaintiff described having panic attacks, during which she felt that she could not breathe or swallow, lasting from fifteen minutes to one hour and occurring as frequently as three times a week (Tr. 25-26). Plaintiff took medications and attended counseling to help her with the panic attacks (Tr. 26-27). Plaintiff lived with her father and her two young children and received help caring for her children from her mother and her sister (Tr. 28-29). Plaintiff cooked and cleaned for her children (Tr. 29). Plaintiff also described her depression, mood swings, crying and daily activities on both good and bad days. (Tr. 29-34).

## 2. Vocational Expert's Testimony

The Vocational Expert ("VE") testified that Plaintiff had no past relevant work (Tr. 35). The ALJ posed a hypothetical question, asking the VE to consider a person of Plaintiff's age, education, and work experience who could perform medium work that was simple, repetitive, and routine, involved no public contact, involved working with things rather than people, avoided hazards, and precluded work in the food service area (Tr. 35). The VE responded that such a person could perform approximately 8,000 jobs in the region as a hand packager, sorter, assembler, inspector, and stock clerk (Tr. 35). The ALJ's second hypothetical question was similar, but instead of performing medium work, it limited the hypothetical person to light work (Tr. 35-36). The VE testified that this second hypothetical person could work as a hand packager, sorter, assembler, inspector, or general laborer, and she identified 11,000 of these jobs regionally (Tr. 36). The third hypothetical question changed the exertional factor to sedentary work (Tr. 36). In response, the VE again identified jobs as a hand packager, sorter, assembler, and inspector, and said that about 2,200 such sedentary jobs existed in the region (Tr. 36).

### B. Plaintiff's Mental Health Treatment History and Opinion Evidence

As Plaintiff questions whether the ALJ's decision concerning her mental limitations is supported by substantial evidence, this review will not needlessly summarize the physical evidence in the record.

Plaintiff underwent a neurological evaluation at the age of 24 by Dr. A. H. Mohamed on January 13, 2005, due to a chief complaint of facial numbness and drawing during periods of stress (Tr. 163-66). Review of systems was positive for impaired taste, blurred vision, depression, nervousness, anxiety, mood changes, dizziness, numbness, and headaches (Tr. 165). Dr. Mohamed

noted that Plaintiff reported episodes involving drawing of the right or left side of her face in association with numbness, closely related to periods of stress and anxiety and Dr. Mohamed opined these episodes were manifestations of an anxiety disorder (Tr. 165).

Plaintiff underwent a psychiatric evaluation by Dr. Timothy J. Sullivan, Jr. on February 18, 2005 (Tr. 167-71). The diagnoses were bipolar disorder I, most recent episode depressed, severe without psychotic features; panic disorder with agoraphobia; and generalized anxiety disorder (Tr. 169). On March 29, 2005, on a state disability determination form, Dr. Sullivan opined Plaintiff has an underlying mental disorder which significantly interferes with functioning, with her diagnoses being bipolar disorder, panic disorder with agoraphobia, and generalized anxiety disorder (Tr. 171).

Plaintiff underwent a consultative exam by Dr. John Thurman on May 4, 2005 (Tr. 172-178). The diagnoses were mood disorder NOS, rule out bipolar II, and anxiety disorder NOS with symptoms of generalized anxiety, panic agoraphobia, with a global assessment of functioning ("GAF")[2] of 58 (176-77). Dr. Thurman opined Plaintiff might have mild to moderate impairments in her ability to function in a vocational setting; she might, at times, have trouble focusing on her work; she might, at times, have trouble with tardiness, absenteeism, or low productivity; she might have mild to moderate difficulty maintaining emotional stability and coping with work-related stress; and she might have mild to moderate difficulty interacting with the general public and a job that required her to do so (Tr. 177-78).

On May 30, 2005, apparently in connection with an earlier application for disability, a

---

[2] A GAF score between 41 and 50 corresponds to a "serious" psychological impairment; a score between 51 and 60 corresponds to a "moderate" impairment; and a score between 61 and 70 corresponds to a "mild" impairment. *Nowlen v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 718, 726 (E.D. Mich. 2003).

5

reviewing state agency psychologist opined Plaintiff is markedly limited in her ability to interact appropriately with the general public and moderately limited in her ability to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to respond appropriately to changes in the work setting, and to travel in unfamiliar places (Tr. 179-96).

Plaintiff was treated for her mental health at Nolachuckey Holston Area Mental Health Clinic ("NHMHC")[3] from July 10, 2007 through June 24, 2008 (Tr. 222-32). A treatment noted dated July, 10, 2007, states Plaintiff was seen for difficulty sleeping and she reported a history of mental health treatment which was successfully treated with medication (Tr. 230). It was noted that Plaintiff had been out of her psychotropic medication since May 29, 2007. She restarted her medications and on August, 23, 2007, she reported decreased irritability, improved energy and no depressive symptoms (Tr. 229). She was supposed to be seen for routine medical follow-up every three months (Tr. 229), however, there is no record of a follow-up visit in the three-month time frame.

On January 31, 2008, a treatment note from NHMHC identified several stressors reported by Plaintiff during a routine medication follow-up appointment, including incarceration of an ex-boyfriend and moving in with her parents (Tr. 225-26). Plaintiff reported that her mood was stable, and the interviewer described her as pleasant and cooperative (Tr. 226). Plaintiff was capable of relevant and logical conversation and she denied any medication side effects (Tr. 226).

---

[3] Apparently, the ALJ referred to these treatment notes as coming from the NHMHC whereas Plaintiff refers to this evidence as having come from Frontier Health.

On February 25, 2008, Plaintiff saw Donna Abbott, M.A., at Psychological Consulting Services, and alleged disability due to social phobia, bipolar disorder, depression and anxiety (Tr. 197, 199).[4] Plaintiff had little to say spontaneously; her affect was somewhat depressed; she seemed somewhat uncomfortable and sat with her head on her hand; she was fidgety; and her eye contact was sporadic although she laughed on occasion (Tr. 199). Plaintiff described a typical day as getting up, fixing her two children something to eat, playing with the children, reading, and generally caring for her children (Tr. 200). Ms. Abbott reported that Plaintiff did laundry and occasionally cooked, usually foods she could put in a microwave (Tr. 200). Plaintiff would perform some cleaning and she would go to the grocery store sometimes (Tr. 200). Ms. Abbott diagnosed panic disorder without agoraphobia, generalized anxiety disorder, social phobia and chronic dysthymic disorder, with a GAF of 53 (Tr. 201). Ms. Abbott estimated that Plaintiff's intellectual functioning was in the "low average" range (Tr. 201). She opined that Plaintiff could attend and concentrate for short periods of time and could maintain a simple routine but that she might have difficulty maintaining regular employment due to her symptoms of anxiety, panic disorder, and depression (Tr. 202). Plaintiff's social interaction showed moderate limitations and Ms. Abbott predicted that Plaintiff would have difficulty working in proximity to others and dealing with stress and change (Tr. 201-02).

On April 25, 2008, William Meneese, Ph.D., reviewed the record for the state agency (Tr. 204-17, 218-20). Dr. Meneese opined that Plaintiff could understand, remember, and carry out short and simple instructions/tasks, but that she would have difficulty with more detailed and complex

---

[4] Plaintiff refers to this as the March 15, 2008 exam, the date next to the signature block (Tr. 202). The report was actually electronically signed March 28, 2008 (Tr. 203). The name of Charlton S. Stanley, Ph.D., appears on Ms. Abbott's report as well (Tr. 202).

tasks (Tr. 220). Dr. Meneese also opined that Plaintiff could maintain attention sufficiently to complete simple tasks without the need for special supervision or more than usual and customary rest breaks (Tr. 220). Plaintiff could also tolerate non-intense interaction with co-workers, supervisors, and the public (Tr. 220).

A treatment note from NHMHC dated May 20, 2008, stated Plaintiff was seen for a routine medication follow-up appointment (Tr. 224, 228). Current stressors were noted as including taking care of her mother and grandmother and the incarceration of friends (Tr. 224-25). Plaintiff reported compliance with medications, she denied any abuse or misuse of her medications, and she denied any side effects from her medications (Tr. 225).

On June 20, 2008, Elizabeth Mullins, a counselor at NHMHC, held a sixty-minute therapy session with Plaintiff in which Plaintiff reported a number of family and relationship stressors as well as the appeal of an earlier disability denial (Tr. 226-27).

On November 7, 2008, Rebecca P. Joslin, Ed.D., reviewed the record for the state agency and prepared a mental RFC assessment (Tr. 247-50). Dr. Joslin opined that Plaintiff could understand and remember simple and detailed instructions; would be able, with some difficulty, to maintain attention, concentration, persistence and pace and adapt to change; but would not be able to interact appropriately with the general public (Tr. 249).

Plaintiff received care at the Church Street Pavilion from December 29, 2008 through June 15, 2009 (Tr. 348-55). On December 29, 2008, counselor Kelly Hensley had a twenty-minute session with Plaintiff regarding several family stressors (Tr. 355). Although Ms. Hensley described Plaintiff as more worried and upset than usual, Ms. Hensley also opined that Plaintiff's adaptation to change was good because she was dealing well with her problems (Tr. 355).

8

On March 6, 2009, Ms. Hensley saw Plaintiff in her home for sixty minutes (Tr. 354). Plaintiff reported that the problems with her family were causing an increase in her anxiety (Tr. 354). Ms. Hensley commented that the new problems Plaintiff was having with her family were causing an increase in her symptoms (Tr. 354). On March 19, 2009, Ms. Hensley reported that Plaintiff had additional stressors due to a legal situation (Tr. 353).

On March 19, 2009, Plaintiff saw Kenneth Greenwood, M.D., for medication management (Tr. 352). Dr. Greenwood described a casual, clean appearance and average eye contact (Tr. 352). Dr. Greenwood rated Plaintiff's mood as fair but anxious and he found her affect to be restricted in intensity and range, though not labile (Tr. 352). Dr. Greenwood found Plaintiff's thoughts goal-directed and sequential without suicidal or homicidal content and with no evidence of delusions, paranoia, or hallucinations (Tr. 352).

On May 11, 2009, Ms. Hensley rated Plaintiff's adaptation to change as fair despite Plaintiff reporting that she was not doing well due to major mood swings (Tr. 351). Ms. Hensley opined that Plaintiff's affect was normal, that she was oriented, and that her mood was happy (Tr. 351).

On June 15, 2009, Plaintiff told Ms. Hensley that she was overwhelmed with all the work that her family expected from her (Tr. 350). Plaintiff said that she would like a break from this pressure and she planned to see a relative, who lived in another town, after her disability hearing (Tr. 350). Ms. Hensley described Plaintiff's affect as normal, and said Plaintiff was oriented and pleasant (Tr. 350).

### C.  ALJ's Findings

At step one, the ALJ found Plaintiff had not worked since July 10, 2007, the date of her SSI application (Tr. 12). At step two, the ALJ identified bipolar disorder, depression, anxiety, and panic

9

attacks as severe impairments (Tr. 12). At step three, the ALJ found that Plaintiff's impairments, whether considered singly, or in combination, did not meet or equal the requirements of any listed impairments (Tr. 12). Between steps three and four, the ALJ determined that Plaintiff retained the RFC to perform medium work, except that she would be limited to simple, routine, repetitive work activity with no public contact (Tr. 13). The ALJ precluded working around hazards, and due to Plaintiff's diagnosis of hepatitis C, also precluded food service work (Tr. 13). The ALJ made an adverse credibility finding, observing that Plaintiff's statements about her activities of daily living and the activities reported in mental counseling treatment notes were not consistent with the degree of functional limitation she claimed (Tr. 15). At step four, the ALJ determined Plaintiff had no past relevant work (Tr. 16). At step five, the ALJ relied on the testimony of the VE in conjunction with the medical-vocational guidelines to find Plaintiff could perform a significant number of medium jobs, in spite of her credible impairments and, thus, was not disabled (Tr. 16-17).

## IV. ANALYSIS

Plaintiff alleges the ALJ erred in evaluating the severity of her mental impairments and their effect on her ability to work. In the main, Plaintiff argues the ALJ erred in only giving "some weight" to the opinion of the consulting examiner, Ms. Abbott.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389,

401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, 2009 WL 2579620, *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived). Nonetheless, the court may consider any evidence in the administrative record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

## B.  RFC Finding

In assessing Plaintiff's RFC, the ALJ gave only "some weight" to the opinion of the

consultative examiner, Ms. Abbott (Tr. 15).[5] Plaintiff argues that "the only opinion of record from a source who actually examined Plaintiff during the relevant time period (i.e., the consultative examination done by Ms. Abbott) indicates Plaintiff's mental impairments are more limiting than found by the ALJ." [Doc 11 at 7]. However, Ms. Abbott's report, which is based on a one-time consultative examination, is also the only report of record from the relevant time period that suggests that Plaintiff has disabling mental impairments. As argued by the Commissioner, Plaintiff ignores substantial evidence from Plaintiff's long time mental healthcare providers about her condition during the relevant time period.

The ALJ properly gave more weight to Plaintiff's longtime mental health providers than to Ms. Abbott's one-time opinion. Those providers indicated Plaintiff had no significant medication side effects and showed improvement when taking her medications as prescribed. The ALJ also properly gave great weight to the state agency consultant who found Plaintiff was not significantly limited. Significantly, the ALJ did not ignore Ms. Abbott's opinion, and indeed gave it "some" weight, accepting her conclusion that Plaintiff was capable of maintaining simple, routine tasks and concentrating for short periods of time. The ALJ discussed Ms. Abbott's opinions that Plaintiff "may have" difficulty maintaining regular employment, that her social skills were moderately limited, that she might have difficulty working closely with others, and that her prognosis was guarded. The ALJ, however, contrasted Ms. Abbott's opinions with those expressed in the records of NHMHC, noting that Plaintiff occasionally made progress, but that her progress was impeded by dealing with issues involving various family members. Based on substantial evidence, the ALJ

---

[5] The ALJ did not mention any prior disability adjudication or medical information from 2005.

found Plaintiff had overall good results with her mental health treatment and therapy and did well when taking her antidepressant medications. The ALJ also listed various activities of Plaintiff, including caring for her two young children, her personal needs, and various chores that support the weight he assigned the various medical opinions.

Plaintiff did not refer to specifics from Ms. Abbott's report that she contends the ALJ failed to consider. Instead, Plaintiff referred to an evaluation done by a Dr. Sullivan in February 2005, a report from a Dr. Thurman dated May 4, 2005, and a review done by a state agency physician on May 30, 2005 [Doc. 11 at Page ID# 39-41]. However, Plaintiff did not allege disability as of February 2005 – at least not in the current disability application. As Plaintiff did not apply for SSI until July 10, 2007, she cannot be found disabled prior to that date. *See* 20 C.F.R. § 416.202(g) (a requirement for obtaining SSI is the filing of an application for SSI benefits); 20 C.F.R. § 416. 912 ("[The claimant] must provide medical evidence showing that [she has] an impairment(s) and how severe it is during the time [she says] that [she is] disabled"). Evidence is material only when it is probative of a claimant's condition during the time period considered by the ALJ—here, the period between July 10, 2007 and September 21, 2009. *See* 20 C.F.R. §§ 404.1512(a) (stating that the agency will consider evidence "material to the determination of whether you are . . . disabled"); 404.1513(e) (noting that such evidence requires proof of the "nature and severity of [a claimant's] impairments for any period in question"). *Cf. Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 277-78 (6th Cir. 2010) (evidence of subsequent deterioration in medical condition deemed immaterial).

An ALJ must consider a claimant's allegations of her symptoms "with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health and Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989). In assessing Plaintiff's RFC, the ALJ gave the

13

required due consideration, and substantial evidence supports the ALJ's findings regarding Plaintiff's mental limitations and functional abilities during the relevant time period.

Given my conclusion that substantial evidence supports the ALJ's weighting of the medical opinions, including the weight he assigned to Ms. Abbott's report, it is not necessary to address the Commissioner's argument that there is no good reason to find Plaintiff disabled based upon Ms. Abbott's opinion.

## V. CONCLUSION

For the foregoing reasons, I **RECOMMEND:**[6]

(1)  Plaintiff's motion for summary judgment [Doc. 10] be **DENIED**.

(2)  Defendant's motion for summary judgment [Doc. 12] be **GRANTED**.

(3)  The Commissioner's decision denying benefits be **AFFIRMED** and this action be **DISMISSED WITH PREJUDICE**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[6] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).